UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SASHA DEE MARTINEZ, | |
| Petitioner, | Case No. 4:17-cv-00516-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| ANDREW SAUL, Commissioner of Social Security Administration, | |
| Respondent. | |

## INTRODUCTION

Pending before the Court is Sasha Dee Martinez's Petition for Review of the

Respondent's denial of social security benefits, filed December 20, 2017. (Dkt. 1.) The

Court has reviewed the Petition, the Answer, the parties' memoranda, and the

Administrative Record (AR). For the reasons that follow, the decision of the

Commissioner will be remanded to the Commissioner with further instructions.[1]

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Respondent in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Security Income on June 25, 2014, alleging disability beginning February 14, 2014.[2] This application was denied initially and on reconsideration, and a hearing was held on October 31, 2016, before Administrative Law Judge (ALJ) Tanya Dvarishkis. After hearing testimony from Petitioner and Vocational Expert Kent Granat, the ALJ issued a decision finding Petitioner not disabled on January 3, 2017. Petitioner timely requested review by the Appeals Council, which denied her request for review on October 16, 2017.

Petitioner timely appealed this final decision to the Court on December 20, 2017. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

Petitioner has a high school education, no prior work experience, no transferable job skills, and her date last insured was June 30, 2014. At the time of the hearing, Petitioner was 30 years of age.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date, February 14, 2014. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's chronic myositis, chronic cough

---

[2] Petitioner initially alleged an onset date of June 7, 2006, which was later amended to February 14, 2014. (AR 18, 25.)

and mixed rhinitis, headaches, bipolar disorder, generalized anxiety disorder, major depressive disorder, and post-traumatic stress disorder (PTSD) to be severe within the meaning of the Regulations. (AR 20.) However, the ALJ found Petitioner's neuropathy, medical epicondylitis, postherpetic neuralgia, ilioinguinal nerve neuralgia, attention deficit disorder (ADD), and fibromyalgia were non-severe impairments under the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically Listings 1.02 (Major Dysfunction of a Joint), 3.03 (Asthma), any of the Appendix 1 impairments in Section 11.00 (Neurological), 12.04 (Affective Disorders), and 12.06 (Anxiety Disorders). If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined that Petitioner retained the RFC to perform light work as defined by 20 C.F.R. § 404.1567(c) and § 416.967(c), except she can frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; but she can never climb ladders, ropes, or scaffolds. She can have only occasional exposure to noise levels greater than "moderate" as defined in the Selected Characteristics of Occupations ("SCO") and can never be exposed to unprotected heights, moving mechanical parts, or other workplace hazards. She can have only occasional exposure to vibration, extreme cold, and

pulmonary/respiratory irritants. She can understand, remember and carryout simple, routine tasks in a job involving only simple decisions and not more than occasional changes in the routine work setting and job duties. She cannot do any high production or pace work, but she may have quota requirements so long as she can control the pace of work. She can have only brief, superficial contact with coworkers, and no contact with the public. She cannot do any jobs requiring tandem job tasks or cooperation with coworkers for task completion. (AR 24.)

In making the RFC determination, the ALJ found that Petitioner's impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 25.) The ALJ considered and discussed the Petitioner's testimony, Idaho Department of Correction records, function reports from Petitioner's mother, medical records, and the opinions of Petitioner's various treating providers contained in the medical records, including, as relevant here: Dr. Craig Denny, MD; Dr. Robert Charlton, PhD; John Cuolo, MEd; Dr. Michael Dennis, PhD; Dr. Mack Stephenson, PhD; Dr. Thomas Coolidge, MD; and Dr. Michael O'Brien, MD. (AR 24-28.) In particular, the ALJ found the RFC was supported by the opinions of Dr. Charlton, Mr. Cuolo, Dr. Dennis, and Dr. Stephenson. (AR 28.)

The ALJ gave "great weight" to the 2014 psychological evaluation of Dr. Charlton, examining psychologist, who concluded Petitioner had major depression,

generalized anxiety disorder, and PTSD, which could likely be managed with therapeutic methods. (AR 27.)[3]

Petitioner's treating doctor, Dr. Denny, completed a mental RFC form in 2016, opining that Petitioner's mental impairments caused marked limitations in all of the listings criteria. The ALJ, however, gave this opinion only "little weight," stating Dr. Denny's conclusions regarding Petitioner's specific limitations were inconsistent with the record as a whole and because Dr. Denny's opinion was rendered on a check-box form. (AR 27-28.)

The ALJ afforded "great weight" to the opinions of two state agency reviewing psychologists, Dr. Dennis and Dr. Stephenson, who concluded the Petitioner had affective disorder and anxiety disorder resulting in mild restrictions in activities of daily living; moderate limitations in social functioning; moderate difficulty in maintaining concentration, persistence, and pace; and no episodes of decompensation of extended duration.

The ALJ gave "little weight" to the opinions of two other state agency reviewing physicians, Dr. Coolidge and Dr. O'Brien, who found Petitioner had no severe medically determinable impairments. The ALJ found these two opinions to be inconsistent with the significant amount of treatment Petitioner had undergone. (AR 27.) The ALJ also gave "little weight" to the Idaho Department of Corrections records Global Assessment of

---

[3] The 2014 Psychological Evaluation (Ex. 3F) was signed by both Dr. Charlton and Mr. Cuoio. (AR 395.) Petitioner's brief, however, refers only to Dr. Charlton. (Dkt. 18.) The Court's order, therefore, will likewise refer to only Dr. Charlton when addressing Petitioner's argument.

Functioning (GAF) score but gave "some weight" to the function reports provided by Petitioner's mother. (AR 28.)

Ultimately, the ALJ concluded the evidence in the record showed that Petitioner's impairments resulted in a number of functional limitations which were accounted for in the RFC but that the evidence did not support additional restrictions.

The Petitioner had no past relevant work and, therefore, the burden shifted to the Commissioner to demonstrate, at step five, that the claimant retained the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.[4]

After evaluating the record and considering the hypothetical posed by the Vocational Expert, Petitioner's age, education, work experience, and RFC, the ALJ determined the Petitioner could perform the requirements of unskilled, light-duty occupations such as garment folder, produce weigher, and electrode cleaner, all of which are jobs that exist in significant numbers in the national economy. (AR 29.) Consequently, the ALJ determined the Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically

---

[4] Petitioner was released from the Idaho Department of Correction on February 14, 2014.

determinable physical or mental impairment which…has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work, but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by

substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

On review, Petitioner argues (1) the ALJ's decision is not supported by substantial evidence and (2) the ALJ improperly admitted additional evidence obtained post-hearing. (Dkt. 18.)

## 1. Whether the ALJ's Decision is Supported by Substantial Evidence

Petitioner argues the ALJ's decision is not supported by substantial evidence, because the ALJ failed to properly consider and weigh the opinions of Dr. Charlton and

Dr. Denny.

## A.    The ALJ's consideration of Dr. Charlton's Diagnosis and Opinion

Petitioner asserts the ALJ erred by failing to properly consider Dr. Charlton's diagnosis of Moodiness and Antisocial Behavior as a severe impairment and failing to adequately discuss the functional impact and limitations of Petitioner's impairments as described by Dr. Charlton in the psychological evaluation when making the listings determination. (Dkt. 18.) Respondent maintains the ALJ's decision properly addressed Dr. Charlton's diagnosis and findings regarding Petitioner's functional limitations. (Dkt. 19.)

### 1.    The ALJ Properly Listed Dr. Charlton's Diagnosis

Dr. Charlton's 2014 psychological evaluation of Petitioner provided the following Multiaxial Diagnosis:

| | |
|---|---|
| Axis I: | 296.33 Major Depression (recurrent, severe, without psychotic features) |
| | 300.02 Generalized Anxiety Disorder |
| | 309.81 Posttraumatic Stress Disorder |
| Axis II: | Depressive Personality Traits |
| Axis III: | Asthma |
| Axis IV: | Moodiness and Antisocial Behavior |
| Axis V: | Deferred at this time |

(AR 694.)

The ALJ's decision considered the Axis I, II, and III diagnosis, concluding Petitioner's bipolar disorder, generalized anxiety disorder, major depressive disorder, and PTSD were severe impairments but that her asthma was nonsevere. (AR 20, 23.) The

ALJ, however, found that none of Petitioner's impairments met the listing requirements. Petitioner argues the ALJ erred by not including Dr. Charlton's Axis IV diagnosis of Moodiness and Antisocial Behavior as a severe impairment. (Dkt. 18.) The Court disagrees.

Unlike Axis I, II, and III, an Axis IV finding is not a "diagnosis." Axis IV is used for reporting psychosocial stressors that may affect the diagnosis, treatment, and prognosis of mental disorders. *Llewellyn v. Comm'r of Soc. Sec.*, Case No. 17-cv-05571-DMR, 2019 WL 1245142, at *10 n. 2 (N.D. Cal. March 18, 2019) (citing American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, (4th ed. 2000) ("DSM–IV") at 27-34) (citation omitted).[5] The ALJ, therefore, did not error by not listing Moodiness and Antisocial Behavior as a "diagnosis."

### 2. The ALJ's Decision Did Not Properly Address Dr. Charlton's Opinion of Petitioner's Functional Limitations

Petitioner argues the ALJ's decision failed to discuss and give appropriate consideration to Dr. Charlton's findings and recommendations regarding Petitioner's functional restrictions resulting from her mental impairments in making the listings determination at step three. (Dkt. 18 at 3.)

The ALJ concluded at step two that Petitioner had the following severe

---

[5] Axis I is the top-level of the DSM multiaxial system of diagnosis represented by clinical disorders with acute symptoms that need treatment. Axis II provides assessment of personality disorders and intellectual disabilities. Axis III identifies medical/neurological conditions that may influence a psychiatric problem. *See generally* DSM-IV at 27-34.

impairments: chronic myositis, chronic cough and mixed rhinitis, headaches, bipolar disorder, generalized anxiety disorder, major depressive disorder, and PTSD. (Dkt. 20.) At step three, therefore, the ALJ evaluated whether Petitioner's impairments met or equaled the severity of one of the listed impairments. The ALJ concluded Petitioner's impairments did not meet any listing. As relevant here, the ALJ concluded the severity of Petitioner's depression and anxiety, considered singly and in combination, did not meet Listings 12.04 (Affective Disorder) or 12.06 (Anxiety Disorders). (AR 23.)

Pursuant to Listing 12.04, an affective disorder is characterized "by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.04 (effective to January 16, 2017). Under Listing 12.06, "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.06 (effective to January 16, 2017). The required level of severity for these disorders is met when the listing requirements in both paragraphs A and B of the regulation are satisfied, or when the requirements in both paragraphs A and C are satisfied.[6]

The paragraph A medical criteria for Listing 12. 04 include medically documented

---

[6] Because Petitioner only challenges the ALJ's determination as to the paragraph B criteria, the Court has not addressed the ALJ's discussion of the paragraph C criteria.

persistence, either continuous or intermittent, of either: four of the characteristics of depressive syndrome or bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes. The characteristics for depressive syndrome include: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; hallucinations, delusions, or paranoid thinking; or manic syndrome as defined.

The paragraph A medical criteria for Listing 12.06 requires medically documented findings of at least one of the following: generalized persistent anxiety accompanied by three out of the four listed signs or symptoms; a persistent irrational fear of a specific object, activity, or situation resulting in a compelling desire to avoid the same; recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average at least once a week; recurrent obsessions or compulsions which are a source of marked distress; or recurrent and intrusive recollections of a traumatic experience, which are the source of marked distress.

The paragraph B functional criteria for both listings requires Petitioner to have at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of an

extended duration. 20 C.F.R. § 404, Subpt. P, App. 1.

The ALJ found Petitioner had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. (AR 23.) Because the ALJ determined Petitioner's mental impairments did not cause any "marked" limitations with respect to the paragraph B criteria, the ALJ concluded that Petitioners' mental impairments did not meet or medically equal a listings impairment.

Petitioner argues the ALJ's listings determination is not supported by substantial evidence, because the ALJ used contradictory evidence and failed to discuss the functional impact of the symptoms described in Dr. Charlton's opinion in determining whether a listing had been met. (Dkt. 18 at 3.) The Court agrees.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony, and resolve ambiguities. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). When the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, the Court does not second-guess that decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir.1989).

The ALJ, however, must "make fairly detailed findings in support of

administrative decisions to permit courts to review those decisions intelligently." *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citation omitted). In making a determination of disability, the ALJ must develop the record and interpret the medical evidence. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted). In doing so, the "ALJ does not need to discuss every piece of evidence." *Id.* (internal quotations and citations omitted); *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (same). The ALJ must, however, explain why "significant probative evidence has been rejected." *Vincent*, 739 F.2d at 1394.

Here, the ALJ's discussion and conclusion that neither listing 12.04 nor listing 12.06 was met in this case is not supported by substantial evidence, because the decision failed to explain why significant probative evidence was rejected and the conclusion was inconsistent with the records cited by the ALJ.

In his 2014 opinion, Dr. Charlton found Petitioner had "[s]ocially repugnant impulses," is "easily provoked to irritability and anger," and described her as "[t]esty and demanding [evidencing] an agitated, major depression that can be noted by her daily moodiness and vacillation." (AR 691.) Dr. Charlton went on to opine Petitioner's "façade of sociability may give way to antagonistic and caustic comments, and gratification may often be obtained by humiliating others." Dr. Charlton found Petitioner was "irritable toward others," had "clinical signs of an anxiety disorder," and had traits that "may be indicative of a deficient social conscience." Despite giving great weight to Dr. Charlton's opinion at step four, the ALJ did not address these findings when making the listing

determination at step three. Dr. Charlton's opinions, particularly concerning Petitioner's sociability, are significantly probative of the listings determination and are contrary to the ALJ's conclusions for the paragraph B criteria. While the ALJ does not need to discuss every piece of evidence, the ALJ must explain why "significant probative evidence has been rejected." *Vincent*, 739 F.2d at 1394. The ALJ failed to do so here with regard to Dr. Charlton's findings.

Further, the evidence the ALJ does cite in the paragraph B criteria discussion does not support the ALJ's decision. In determining Petitioner had moderate difficulties in maintaining social functioning, the ALJ cites to isolated portions of two records from Children's Supportive Services, Inc. (CSS) dated March 2014 and March 2015. (AR 23.) The March 2014 record noted Petitioner was "irritable and had a negative attitude." The March 2015 chart note indicated Petitioner had a "goal-directed thought process and a positive attitude." (AR 23.)

The portions of both chart notes relied upon by the ALJ were from the standardized check-box sections of the CSS forms. (Ex. 2F/8-10) (AR 1458.)[7] Both the March 2014 and 2015 CSS forms, however, also include clinical narratives stating Petitioner "has significant difficulties in family, social and psychiatric areas [that] are severe enough to markedly interfere with her day to day activities." (AR 685) (Ex. 2F at 10.) This clinical finding is at odds with the ALJ's listing determination and the ALJ

---

[7] The ALJ's citation to the March 2015 chart note is incorrect. (AR 23) (citing Ex. 2F/20-21.) It appears the record the ALJ intended to cite is Exhibit 23F at pp. 20-21 which is a CSS comprehensive diagnostic assessment form dated March 2015.

provides no discussion or explanation for the inconsistency between the listings determination and the contradictory clinical evidence in the very same record she cites to support her determination.

The medical records cited by the ALJ, when viewed in their entirety, do not support the ALJ's conclusion that Petitioner's impairments did not meet any of the listings. The Court, therefore, finds the ALJ did not identify substantial evidence in the record to support the listings determination or explain why significant probative evidence in the record contrary to the ALJ's determination was rejected. *Vincent*, 739 F.3d at 1394. The Petition, therefore, will be granted in this regard and remanded to the ALJ for further proceedings.

In so finding, the Court is not substituting its judgment for that of the ALJ. *Verduzco*, 188 F.3d at 1089. The ALJ's disability determination, and in particular the listings determinations, may ultimately be correct. The remand in this case is because the ALJ has not adequately addressed the significant probative evidence in the record that is contrary to the listings determination, which includes the very records relied upon by the ALJ in the decision and Dr. Charlton's findings.

B.      **The ALJ's Consideration of Dr. Denny's Opinion**

Petitioner argues the ALJ did not give proper consideration to the opinion of her treating psychiatrist, Dr. Denny. (Dkt. 18 at 4-5.) Respondent maintains the ALJ appropriately gave little weight to Dr. Denny's opinion, because it was inconsistent with the record as a whole and presented in a check-box form. (Dkt. 19 at 7.)

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* SSR 96-2P, 1996 WL 374188, at *1 (S.S.A. July 2, 1996) (stating that a well-supported opinion by a treating source which is not inconsistent with other substantial evidence in the case record "must be given controlling weight; i.e. it must be adopted.").

ALJs generally give more weight to medical opinions from treating physicians, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations...." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, the opinion of a treating source is generally given more weight than the opinion of a doctor who does not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Should the ALJ decide not to give a treating physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the

frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (citation omitted); *see also* SSR 96-2P, 1996 WL 374188 at *5 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Nonmedical or other source opinions are not entitled to the same deference as acceptable medical source opinions. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing 20 C.F.R. § 404.1527; SSR 06-03p). Other sources include nurse practitioners, physical therapists, occupational therapists, licensed practical nurses (LPN), and registered nurses (RN). *See* 20 C.F.R. § 416.913(a) (defining acceptable medical sources as licensed physicians, psychologists, optometrists, and podiatrists). The ALJ may discount testimony from "other sources" if the ALJ "'gives reasons germane to each witness for doing so,'" supported by substantial evidence in the record. *Id.* However, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self -reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### 1. Dr. Denny's Opinion

Dr. Denny has been Petitioner's treating psychiatrist since September of 2014. (AR 1213.) On September 27, 2016, Dr. Denny completed a mental RFC form wherein he opined that Petitioner has depressive, manic, and bipolar syndromes with all of the listed symptoms except hallucinations, delusions, or paranoid thinking. (AR 1213-1218.) Dr. Denny opined that Petitioner had marked limitations in the first three paragraph B criteria as well as repeated episodes of decompensation, each of an extended duration. As to the paragraph C criteria, Dr. Denny noted Petitioner's disorders caused more than a minimal limitation of ability to do basic work activities due to (1) repeated episodes of decompensation, each of extended duration and (2) marginal adjustment that even a

minimal increase in mental demands or change in environment would be predicted to cause her to decompensate.

As to Petitioner's specific RFC and limitations, Dr. Denny's assessment was that Petitioner's ability to sustain mental activity over a normal workday and workweek, on an ongoing basis, had a number of moderate and marked limitations in the areas of: understanding and memory, sustain concentration and persistence, social interaction, and adaption. Dr. Denny opined that work-related stressors would increase the level of Petitioner's impairment, simple work would aggravate her symptoms, and Petitioner would miss work more than three or four times per month due to her impairments.

In making the RFC determination, the ALJ gave Dr. Denny's opinion concerning Petitioner's functional limitations little weight, concluding it was "inconsistent with the record as a whole" and because it was "rendered on a check-box form that leaves little room for providing a specific opinion in some areas." (AR 28.) Petitioner argues the ALJ did not give proper weight to Dr. Denny's opinion as a treating physician and the ALJ's reasons for giving it little weight are not clear and convincing nor supported by the medical evidence. The Court agrees.

### 2.      Dr. Denny's Opinion was Not Inconsistent with the Record

An ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198. Where, however, "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and

legitimate reasons that are supported by substantial evidence." *Id.*; *see also Trevizo*, 871 F.3d at 675.

The ALJ concluded Dr. Denny's opinion was inconsistent with the "records as a whole, which includes multiple normal objective mental status exam findings," citing to three medical records – Exhibits 4F/9, 9F/27, and 22F/30-31. (AR 28.) The three records, however, do not support the ALJ's conclusion.

The first record, Exhibit 4F, is comprised of three progress notes from Petitioner's visits to the Pearl Health Medical Clinic in April, May, and June of 2014. (AR 28.)[8] The reason for the April 2014 appointment was to address Petitioner's bipolar disorder, depression, and sleeping problems. In May 2014, Petitioner visited the clinic "in crisis" because her grandmother had passed away. The June 2014 appointment was a follow-up to the first two visits. All of the progress notes assessed Petitioner as having bipolar disorder and attention deficit disorder, and they each evaluated the effectiveness of the psychotropic medications Petitioner was taking. All of the progress notes included discussions of Petitioner's depressive and manic symptomatology, PTSD, and generalized anxiety disorder.

The ALJ's decision relies on the mental status exam portions of the Exhibit 4F records, in particular the May 2014 visit, as examples of "normal objective mental status exam findings." (AR 28.) The mental status exam portions of the Exhibit 4F progress

---

[8] Notably, Respondent does not acknowledge or discuss Exhibit 4F. (Dkt. 19 at 7-8 and n. 2.) Responded instead focuses on Exhibits 9F and 22F as well as other earlier portions of the ALJ's decision to support the argument that the ALJ gave appropriate weight to Dr. Denny's opinion.

notes state, in summary:

> Appearance: appropriate. Speech: normal. Activity/Behavior restless.
> Thought Process: linear, congruent. Thought Content: worthless or
> helpless. Emotions/Moods/Affect dysphoric. Orientation: Oriented to
> person, place, time and purpose. Suicidal/Homicidal Ideation No suicidal
> ideations, No homicidal ideations.

(AR 701-02, 705, 708.) When considering the progress notes in their entirety, and in particular the mental status exam findings relied on by the ALJ, Exhibit 4F does not support the ALJ's conclusion that Dr. Denny's opinion was "inconsistent with the record as a whole, which includes multiple normal objective mental status exam findings []."

The mental status exam findings in Exhibit 4F show some "normal" objective findings as to appearance, speech, orientation, and thought process, but they also contain clear findings of Petitioner's mental disorders which support Dr. Denny's opinion. Most notably that her moods was "dysphoric" and her thought content was "worthless" or "helpless." The ALJ cannot rely on isolated parts of the mental status exam findings to discredit a treating doctor's opinion, while ignoring the other parts of that very same portion of the very same record that are consistent with Dr. Denny's opinion.

An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the record that bolster her findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (ALJ cannot selectively rely on some entries in petitioner's records while ignoring others.); *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.") (citation and marks omitted);

*Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); *see also Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion).

The ALJ may not cherry-pick evidence to support a conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination. *Holohan*, 246 F.3d at 1207 (concluding that the ALJ's basis for rejecting the treating physician's medical opinion was not supported by substantial evidence because the ALJ "selectively relied on some entries ... and ignored the many others that indicated continued, severe impairment.").

Here, the ALJ's reason for according Dr. Denny's opinion little weight, based on Exhibit 4F, is not supported by substantial evidence. The ALJ's selective reliance on portions of the record, while ignoring other relevant information, was improper. *Id.* When viewed completely, Exhibit 4F is consistent with Dr. Denny's opinion. The ALJ provided no discussion of the other relevant portions of the record. Therefore, the ALJ's decision discrediting Dr. Denny's opinion is not supported by substantial evidence.

The other two records cited by the ALJ, Exhibit 9F and 22F, also do not support the ALJ's reasoning for rejecting Dr. Denny's opinion. Both exhibits are medical records

from Petitioner's hospital visits for pain in her neck and elbow pain.[9] Neither record was

from a mental health professional or for a mental health related appointment. Although

the records in both exhibits contain general observations by the providers stating the

Petitioner was oriented to person, place, and time; had an intact memory and recall; and

had normal mood and appropriate affect with judgment and insight intact; these records

were, again, not mental health assessments or compiled by a mental health professional.

(AR 928-929.) The general observations of Petitioner's mental status during these

appointments by other source providers do not amount to substantial evidence supporting

the ALJ's decision to discredit the mental health opinion of Dr. Denny, the Petitioner's

treating psychiatrist. Notably, these records all reported that Petitioner's past medical

history included bipolar disorder and depression and listed her medications used to treat

those conditions.

    In short, none of the exhibits cited by the ALJ constitute substantial evidence

supporting the conclusion that Dr. Denny's opinion was "inconsistent with the record as a

whole, which includes multiple normal objective mental status exam findings." (AR 28.)

Just the opposite, the records relied upon by the ALJ all note Petitioner's mental health

history includes diagnosis of bipolar and anxiety disorders. One record in particular,

---

[9] Exhibit 9F contains a number of progress notes from Petitioner's visits to Blackfoot Medical Center from June 17, 2014 to November 18, 2014. (AR 906.) The ALJ cited the particular record from Petitioner's November 18, 2014 visit for pain on the left side of her neck. (AR 926.) Exhibit 22F are hospital records dates February 1, 2014 to August 22, 2016 from Teton Spine & Sports. The ALJ cited to the November 5, 2014 appointment which was a follow-up visit for Petitioner's pain in her left elbow. (AR 1246-1249.)

Exhibit 4F, is directly contrary to the ALJ's finding and reasoning for rejecting Dr.

Denny's opinion. The ALJ's reliance on isolated portions of the mental status findings in

these records turns a blind eye to the records as a whole which, when viewed in their

entirety, do not support the ALJ's conclusion.

Moreover, the records cited by the ALJ to discredit Dr. Denny's opinion, a treating

doctor, were compiled by "other medical sources" such as nurse practitioners. Nurses and

nurse practitioners are typically considered "other medical sources." *See Dale v. Colvin*,

823 F.3d 941, 943 (9th Cir. 2016); 20 C.F.R. § 404.1513(a) and (d)(1); *but see Britton v.*

*Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (citing *Gomez v. Charter*, 74 F.3d 967, 971

(9th Cir. 1996) (A nurse practitioner could be considered a medically acceptable source

where he or she worked so closely under a physician that they acted as the physician's

agent). Generally, these sources are not afforded the same deference as "acceptable

medical sources" such as a licensed physician like Dr. Denny. *Molina*, 674 F.3d at 1111;

20 C.F.R. § 404.1527.

Respondent's brief points to other portions of the ALJ's decision as support for the

conclusion that Dr. Denny's opinion should be given little weight. (Dkt. 19.) In

particular, Respondent argues the ALJ determined elsewhere in the decision that there

was no evidence the Petitioner had suffered repeated episodes of decompensation, which

was contrary to Dr. Denny's opinion. (Dkt. 19 at 8) The ALJ, however, did not rely on

those other portions of the record to explain the reasons for giving little weight to Dr.

Denny's opinion. The Court's inquiry here is constrained to the reasons asserted by the

ALJ and the evidence relied upon by the ALJ in support of those reasons. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Indeed, "the inconsistencies identified independently [of the ALJ] cannot provide the basis upon which [to] affirm the ALJ's decision." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The Court, therefore, will not address the additional reasons advanced by Respondent.

The records cited in the decision do not support the ALJ's conclusion that Dr. Denny's opinion was "inconsistent with the record as a whole, which included multiple normal objective mental status exam findings." (AR 28.) Therefore, the ALJ was required to articulate "clear and convincing reasons that are supported by substantial evidence" before rejecting the uncontradicted opinion of Dr. Denny, a treating physician. *Ryan*, 528 F.3d at 1198.[10] The ALJ did not do so here.

Instead, the ALJ ignored relevant findings from Petitioner's mental health records and cherry-picked isolated findings from records unrelated to Petitioner's mental health disorders, symptoms, and limitations to discredit Dr. Denny's opinion. The records relied upon by the ALJ do not, however, contradict or discredit Dr. Denny's opinion regarding

---

[10] Even if Dr. Denny's opinion was controverted, for the reasons stated herein, the Court also finds the ALJ did not provide specific, legitimate reasons based on substantial evidence in the record for rejecting Dr. Denny's opinion. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).

Petitioner's functional mental health limitations. Because the ALJ has not shown clear and convincing reasons supported by substantial evidence for rejecting Dr. Denny's opinion, the ALJ improperly accorded little weight to Dr. Denny's opinion.

Petitioner was prejudiced as a result of the ALJ's error, because there is a substantial likelihood that, had Dr. Denny's opinion been given appropriate weight, the ALJ's disability determination would have been different. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("[W]here the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether reconsideration is necessary. By contrast, where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate.") (citation omitted); *Molina*, 674 F.3d at 1115-16. For this reason, the Court reverses and remands the ALJ's decision for further proceedings.

### 3. The Check-Box Form is Not a Proper Basis to Discredit Dr. Denny's Opinion

The ALJ also gave little weight to Dr. Denny's opinion because it was "rendered on a check-box form that [left] little room for providing a specific opinion in some areas," and "only allow[ed] the author to select 'marked' level impairments at 3F/3." (AR 28.)[11]

The ALJ may discredit treating physicians' opinions that are conclusory, brief, or unsupported by medical evidence. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195

---

[11] The ALJ appears to have incorrectly cited to "3F/3," which is Dr. Charlton's report, instead of "21F/3," which is Dr. Denny's opinion.

(9th Cir. 2004); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because they were check-off reports that did not contain any explanation of the bases of their conclusions); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports). A treating physician's opinion is not conclusory or unsupported, however, where treating records comprise a significant portion of the record and consistently speak to the claimant's impairments. *Kassebaum v. Comm'r of Soc. Sec.*, 420 Fed. App'x 769, 773 (9th Cir. 2011).

Thus, while an ALJ may "permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions," *Molina*, 674 F.3d at 1111 (citation omitted), the ALJ should not reject an opinion for being presented in a check-box format when the opinion is supported by the treatment notes. *See Garrison*, 759 F.3d at 1014 n. 17; *Esparze v. Colvin*, 631 Fed. App'x 460, 462 (9th Cir. 2015) ("Although the treating physician's opinions were in the form of check-box questionnaires, that is not a proper basis for rejecting an opinion supported by treatment notes."). A check-box report by a treating physician that is supported by the physician's treating notes is "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit," due to the physician's significant experience with the claimant and supporting records. *Id.*

The ALJ's finding that the treating physician's assessment is not supported by medical evidence must itself be supported by the administrative record and explicit findings; otherwise, the ALJ does not provide "specific and legitimate reasons supported

by substantial evidence in the record" for rejecting the treating physician's opinion. *Jones v. Astrue*, 503 F. App'x 516, 517 (9th Cir. 2012) (finding error where an ALJ rejected a treating physician's report on the ground that "it is unsupported by objective findings and is inconsistent with the claimant's own reports of her activities," because it was not clear what specifically made the record insufficient to support the opinion).

Here, Dr. Denny was Petitioner's treating psychiatrist since September 2014. Dr. Denny completed the mental RFC on September 6, 2016. (AR 1213-1218.) While a majority of the form is checked boxes, Dr. Denny made notations on the form about Petitioner's medications, the onset of her limitations, and additional comments regarding Petitioner's prognosis. (AR 1213, 1218.) In addition, the record contains Dr. Denny's treatment notes dated January 6, 2015 to August 5, 2016 which reflect Petitioner had been receiving ongoing treatment, including several psychotropic medications for her mental health disorders. (AR 1141-1148, Ex. 17F.)

Those treatment notes are consistent with Dr. Denny's findings contained on the mental RFC. In particular, Petitioner's history, the onset and ongoing nature of her symptoms, as well as her continued efforts to treat her symptoms. The ALJ's rejection of Dr. Denny's opinion because it was contained on a check-box form, therefore, was improper. Further, Dr. Denny's treatment records were consistent with records from other providers reporting Petitioner had been diagnosed with bipolar disorder, anxiety disorder, major depressive disorder, and PTSD, as well as Petitioner's ongoing use of medications to control the symptoms of her mental disorders. (Exhibits 2F-4F, 9F, and 23F.)

For these reasons, the Court finds the ALJ's second reason for giving Dr. Denny's opinion little weight was also improper. The Petition will be granted in this regard and remanded for further proceedings.

## 2. Whether the ALJ Erred by Admitting Additional Post-Hearing Evidence

Petitioner claims the ALJ erred by admitting post-hearing evidence without proffering the evidence to Petitioner's attorney. (Dkt. 18.) Respondent argues the ALJ's admission of post-hearing evidence does not warrant remand and, regardless, Petitioner has not shown prejudice. (Dkt. 19.)

When an ALJ obtains and proposes to admit additional evidence after a claimant's administrative hearing, the Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX) states that the ALJ "will proffer the evidence to the claimant and appointed representative" unless one of three circumstances is present, none of which are present here. *See* HALLEX I–2–7–1(B). HALLEX, however, "does not carry the force of law" and is not binding on this Court. *Roberts v. Comm'r of Soc. Sec.*, 644 F.3d 931, 933 (9th Cir. 2011) (internal citations omitted) (a reviewing court will not "review allegations of non-compliance with [HALLEX's] provisions."); *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003) (HALLEX is not binding authority and does not "impose judicially enforceable duties."). "HALLEX is 'an internal [agency] policy manual ... [and] does not impose judicially enforceable duties on either the ALJ or this court.'" *Lockwood v. Comm'r of Soc. Sec.*, 616 F.3d 1068, 1072 (9th Cir. 2010). As such, courts will not "review allegations of noncompliance with the manual" because it

"does not have the force and effect of law [and] is not binding on the Commissioner."
*Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000); *see also Lockwood*, 616 F.3d at 1072.

Consequently, Petitioner's argument that the ALJ failed to proffer the evidence under

HALLEX does not warrant remand.

Regardless, even if the ALJ violated HALLEX, Petitioner has not established

prejudice. "Reversal on account of error is not automatic, but requires a determination of

prejudice." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "The burden is on the

party claiming error to demonstrate not only the error, but also that it affected his [or her]

'substantial rights,' which is to say, not merely his [or her] procedural rights." *Id.*

The post-hearing evidence admitted in this case was Exhibit 23F, consisting of

CSS records from March 2014 and 2015 and containing: Petitioner's self-reported

medical social history, CSS's comprehensive diagnostic and functional assessment,

CSS's initial psychiatric diagnostic evaluation, CSS's treatment plan, and updates. (AR

1438-1462.) The ALJ considered Exhibit 23F when evaluating the paragraph B criteria.

As discussed above, however, the Court has concluded that Exhibit 23F did not support

the ALJ's decision.

Petitioner has not raised any other substantive arguments to the Court regarding

the exhibit or otherwise shown she has suffered prejudice as a result of the ALJ's

admission of Exhibit 23. Moreover, Petitioner could have presented any arguments

concerning Exhibit 23F to the Appeals Council. Accordingly, the Court finds Petitioner

has not shown prejudice resulted from the ALJ's admission of post-hearing evidence. The

Petition will be denied on this issue.

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)     The Petition for Review (Dkt. 1) is **GRANTED in part and DENIED in part** as stated herein.

2)     This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)     This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 10, 2019

_____
Honorable Candy W. Dale
United States Magistrate Judge